IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01866-WJM-MJW

DAVID LEE WOMACK,

Plaintiff,

v.

DARREN FOSTER, Correctional Counselor, ADX Florence;
ELEANOR ALEXANDER, Discipline Hearing Officer, North Central Regional Office;
RICHARD ARKO, Senior Officer Specialist, ADX Florence;
ANTHONY OSAGIE, Physician's Assistant, ADX Florence;
RONALD CAMACHO, Mid-Level Provider, ADX Florence; and
JOHN DOE, ADX Florence,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 43)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter was referred to this court pursuant to an Order Referring Case issued by Judge William J. Martinez on November 7, 2013. (Docket No. 19).

**PLAINTIFF'S ALLEGATIONS**

Plaintiff is a prisoner in the custody of the Federal Bureau of Prisons ("BOP") and is currently incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado. The operative pleading is the Amended Prisoner Complaint (Docket No. 12) brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, and section 504 of the Rehabilitation Act, 29 U.S.C. §

2

794(a). In that pleading, plaintiff named the BOP, 13 individuals, and a John Doe as defendants. However, on November 6, 2013, all but five of the named defendants and the John Doe defendant were dismissed by Order of Judge Lewis T. Babcock. (Docket No. 17). Plaintiff alleges the following against those remaining defendants.

**Claim One.  Eighth Amendment Violation.** Plaintiff has been diagnosed as mentally ill. He also claims to be illiterate. On September 21, 2012, defendant Alexander (ADX hearing administrator) convened an ADX hearing at which plaintiff spoke. Alexander refused to record the hearing or provide unspecified disability accommodations. After the hearing, Alexander prepared a report which shows mental health and illiteracy information was available but not utilized. Alexander submitted the report on September 21, 2012, to former ADX Warden Davis for a final decision. On September 27, 2012, Davis approved plaintiff's placement in ADX Florence despite knowing about plaintiff's mental illness and disabilities.

Judge Babcock construed this claim as alleging that plaintiff's Fifth Amendment due process rights and rights under the ADA and the Rehabilitation Act were violated by Alexander. (See Docket No. 17 at 4 and 5).

**Claim Two.  Eighth Amendment Violation.** Prior to October 2012, plaintiff was not infected with Helicobacter pylori ("H. pylori"), which plaintiff states is a bacteria that is found in the stomach, is transmitted through fecal-oral contact, and causes inflammation and peptic ulcers. On January 28, 2013, a blood test revealed that defendant ADX staff member John Doe infected plaintiff with H. pylori through the contamination of plaintiff's food with fecal matter. Plaintiff had excruciating stomach

pain, weight loss, loss of appetite, and nausea, but defendants Osagie and Camacho, both ADX physicians assistants, failed to provide adequate treatment of plaintiff's pain and failed to order diagnostic testing such as an esophagogastroduodenoscopy, which plaintiff claims is the standard treatment/diagnostic procedure.

**Claim Three. First Amendment (Retaliation).** Plaintiff filed numerous lawsuits against the BOP and its contractors, noting a case in the Middle District of Pennsylvania and another in the District of New Jersey. Plaintiff also filed complaints against BOP staff at ADX with assistance from attorneys and other inmates. Defendant Foster violated BOP policy in UDC (disciplinary) hearings by deliberately refusing to read disciplinary charges and rights to plaintiff when he knew plaintiff was illiterate. On one occasion, defendant Arko spit on plaintiff's meal prior to serving it.

Plaintiff seeks monetary and injunctive relief.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is a Motion to Dismiss Amended Complaint (Docket No. 43), which was filed by the five named defendants.[1] These defendants seek dismissal of the Amended Prisoner Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) because plaintiff has not stated a claim upon which relief can be granted, each defendant is entitled to qualified immunity, this court should not create a Bivens remedy for the Fifth Amendment due process or First Amendment retaliation claims, any official capacity claims are barred by sovereign

---

[1] Defense counsel states that he does not represent defendant John Doe but notes that John Doe has not been served in accordance with Fed. R. Civ. P. 4(m). He thus suggests it would be appropriate for the court to dismiss the action against John Doe or issue a Show Cause Order as to why the time for service should be extended.

4

immunity, and this court lacks personal jurisdiction over defendant Alexander, who works in Kansas.

On December 9, 2013, this court issued an Order (Docket No. 34) granting plaintiff's motion for appointment of counsel, noting, however, that the Order did not guarantee that a pro bono attorney would ultimately appear for plaintiff. Plaintiff was thus advised that unless and until an attorney entered an appearance on his behalf, he remained personally responsible to comply with the court's orders and deadlines and to take all other actions necessary to continue to pursue this case. In addition, the court advised plaintiff that it would not consider the fact that pro bono counsel has yet to appear to be good cause to extend any deadlines or continue any scheduled matters. (Docket No. 34 at 2). A pro bono attorney was selected pursuant to the court's Pilot Program to Implement a Civil Pro Bono Panel. (Docket Nos. 55 and 56). However, that attorney subsequently filed a notice that she declined representation of the plaintiff in this matter. (Docket No. 58).

This court thus issued a Minute Order on April 23, 2014 (Docket No. 59), giving plaintiff up to and including May 23, 2014, to file a response to the Motion to Dismiss Amended Complaint (Docket No. 43), noting that no further extensions would be granted. Plaintiff subsequently filed a letter with attachments (Docket No. 60), which this court has construed as his response to the defendants' motion.

The court has carefully considered the motion to dismiss (Docket No. 43), plaintiff's letter and attachments (Docket No. 60), and applicable case law and Federal Rules of Civil Procedure. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and

recommendation that the motion to dismiss be granted.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the

plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Claim One.**  In Claim One, plaintiff raises Fifth Amendment, ADA, and Rehabilitation Act claims against defendant Alexander based upon Alexander's alleged refusal to record the ADX hearing conducted on September 21, 2014, his refusal to provide unspecified disability accommodations, and his preparation of a report on September 21, 2014, following the hearing which showed that mental health and illiteracy information was available but not utilized.  Plaintiff has submitted to the court defendant Alexander's September 21, 2012, ADX General Population Hearing Administrator's Report.  (See Docket No. 26 at 14-25).  The court may consider that report without converting the defendants' motion to dismiss to a motion for summary judgment.  See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.  Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind.  When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.").

Defendants correctly assert that the plaintiff is not entitled to relief under the ADA or Rehabilitation Act because "individual defendants in their individual capacities are not

properly subject to suit under the Rehabilitation Act" or the ADA.  Ayotte v. McPeek, 2011 WL 2531255, at *5 (D. Colo. June 24, 2011) (Martinez, J.);  Montez v. Romer, 32 F. Supp.2d 1235, 1241 (D. Colo. 1999).  Plaintiff has not stated in his Amended Prisoner Complaint that he is suing any of the defendants in their official capacity.  Therefore, it is recommended that plaintiff's ADA and Rehabilitation Act claims contained in Claim One be dismissed.

Defendants also correctly assert that plaintiff has failed to state a Fifth Amendment claim in Claim One.  The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend V.  Not every deprivation of liberty at the hands of prison officials, however, has constitutional dimension because prisoners retain only a "narrow range of protected liberty interests."  Rezaq v. Nalley, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir 1994)).  "For example, the Supreme Court has recognized that 'the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.'"  Id. (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)).  "A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  Id. (quotations omitted).

In determining whether plaintiff had a protectable liberty interest, the court must determine whether plaintiff's assignment to ADX imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  In this endeavor, the court is guided by the reasoning in Rezaq in which the Tenth Circuit identified four potentially relevant, but nondispositive, factors.  The factors include

9

whether (1) the placement relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. Id.; Estate of DiMarco v. Wyoming Dep't of Corrections, 473 F.3d 1334, 1342 (10th Cir. 2007). While these factors are useful to guide the liberty interest analysis, they do not serve as a constitutional touchstone. Rezaq, 677 F.3d at 1012. "[T]he proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." Id. With these considerations in mind, the court turns to the question of whether plaintiff had a protected liberty interest in avoiding confinement in ADX.

First, the court considers the BOP's penological interest in confining plaintiff in ADX; it is sufficient for the BOP to show that there is a reasonable relationship between confinement in ADX and its asserted penological interests. See id. at 1014. Here, it appears from defendant Alexander's report, provided by the plaintiff and referenced in the Amended Prisoner Complaint, that the penological interest in confining plaintiff to ADX was safety and security concerns. That report indicates that plaintiff was convicted of armed burglary (2 counts), rape while armed, armed kidnapping (2 counts), armed robbery (3 counts),[2] and possession of a firearm during a violent or dangerous offense, and moreover the report also details the plaintiff's very lengthy history of serious

---

[2]The report notes that "[o]n November 30, 1992, the inmate entered his victims' home, raped a 21-year old girl, and then took her to her mother's room. The inmate tied the girl up and took the mother to an ATM, where he forced her to withdraw money and give it to him. The inmate returned to the home and forced the girl and her mother to clean all areas of the house where he may have been, and forced the girl to bathe." (Docket No. 26 at 21).

10

misconduct while incarcerated that includes hundreds of incident reports including assaults, threatening staff, and setting fires. It is well settled that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." Sandin v. Conner, 515 U.S. 472, 482 (1995); see DiMarco, 473 F.3d at 1342 (the court must be "mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts"). In light of plaintiff's criminal history and very lengthy history of serious institutional misconduct, the court finds that there was a reasonable relationship between confining him in ADX and the BOP's penological interests of institutional security and safety. Thus, this factor does not weigh in favor of finding a protected liberty interest.

With regard to the second factor, in Rezaq, the Tenth Circuit discussed the conditions of confinement that exist in ADX, and while recognizing that "[t]he conditions at ADX are undeniably harsh," found that "[t]he conditions at ADX . . . do not, in and of themselves, give rise to a liberty interest because they are substantially similar to conditions experienced in any solitary confinement setting" and concluded "that the conditions in the general population unit at ADX are not extreme as a matter of law." Rezaq, 677 F.3d at 1014, 1015. Other cases have concluded that the conditions imposed at ADX are not atypically extreme. Gowadia v. Stearns, 2014 WL 959487, at *9 (D. Colo. Mar. 12, 2014) (citing cases). Here, plaintiff has not made any specific complaints about the conditions at ADX. There is no indication that the conditions plaintiff experiences in ADX are materially different than those discussed in Rezaq. The court thus finds that the conditions of plaintiff's ADX confinement do not weigh in favor of finding a protected liberty interest.

11

The court next considers whether the placement increased the duration of plaintiff's confinement. Plaintiff has not made any allegation that the BOP's decision to confine him at ADX extended his length of his sentence or affected his release eligibility, if applicable. Therefore, this factor does not weigh in favor of finding a protected liberty interest.

Finally, the court considers whether the placement was indeterminate. The duration and indeterminacy of a placement in extreme conditions are often critical considerations in the liberty interest analysis. Rezaq, 677 F.3d at 1016 (citing Wilkinson, 545 U.S. at 224). However, while duration of confinement is an important consideration, it must be considered in tandem with indeterminacy. Id. Here, plaintiff has not alleged that his ADX placement is indeterminate, nor has he alleged that he is not provided with the same periodic reviews and additional procedural protections that the Tenth Circuit found sufficient to render prisoners' ADX confinement not indefinite. Gowadia, 2014 WL 959487, at *10 (citing Rezaq, 677 F.3d at 1016). Therefore, this factor does not weigh in favor of finding a protected liberty interest.

The totality of the conditions presented by the plaintiff's sentence and confinement, including the above four factors, do not weigh in favor of finding that plaintiff's confinement at ADX deprived him of a protected liberty interest. This court thus concludes that plaintiff's assignment to ADX does not present an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Rezaq, 677 F.3d at 1012. It is thus unnecessary for the court to address whether plaintiff was afforded adequate procedural protections.

Plaintiff's allegations in Claim One fail to state a claim upon which relief may be

granted, and it is thus recommended that Claim One be dismissed.

**Claim Two.** Defendants next assert that the plaintiff fails to state an Eighth Amendment claim against defendants Osagie and Camcho. In Claim Two, plaintiff alleges that he had excruciating stomach pain, weight loss, loss of appetite, and nausea, but PAs Osagie and Camacho failed to provide adequate treatment of plaintiff's pain and failed to order diagnostic testing such as an esophagogastroduodenoscopy, which plaintiff claims is the standard treatment/diagnostic procedure. Plaintiff acknowledged that he was prescribed medication to treat his condition. Docket No. 12 at 2 ("The medication prescribed to plaintiff for said ailment, (H-pylori) was to no avail.").

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. "[T]he Constitution is only implicated in situations in which prison officials act purposefully to impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent diagnosis or treatment does not rise to the level of an 8th Amendment violation." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011). To plead an Eighth Amendment claim of deliberate indifference to medical needs, "an inmate must allege: (i) that he suffered from a serious medical need–that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person

would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it." Id. "The subjective component requires an examination into the defendant's actual state of mind. To satisfy this element, the inmate must plead facts that show that the defendant both 'actually knew of' and 'deliberately disregarded' the fact that the inmate was suffering from a serous medical need." Id.

  Here, this court agrees with the defendants that the plaintiff has failed to allege facts showing the subjective component. Furthermore, plaintiff's allegations indicate that defendants did in fact provide medical treatment. A medical difference of opinion is not actionable under the Eighth Amendment. Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005). Defendants' refusal to provide a particular course of treatment sought by the plaintiff does not constitute deliberate indifference. See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). Also, a medical providers' considered decision not to order an certain diagnostic test does not violate a prisoner's constitutional rights. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice and as such the proper forum is the state court."). This court thus recommends that Claim Two against defendant Osagie and Camcho be dismissed.

14

**Claim Three.**  In Claim Three, plaintiff alleges a violation of the First Amendment based upon   retaliation by defendants Foster and Arko for plaintiff's filing of numerous lawsuits against the BOP and its contractors (in particular a case in the Middle District of Pennsylvania and another in the District of New Jersey) and complaints against BOP staff at ADX.  Defendant Foster allegedly retaliated against plaintiff by violating BOP policy in disciplinary hearings by deliberately refusing to read disciplinary charges and rights to plaintiff when he knew plaintiff was illiterate.  Defendant Arko allegedly retaliated by spitting on one of plaintiff's meals prior to serving it.

It is well-settled that "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his' constitutional rights."  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).  Plaintiff may make a showing of retaliation by demonstrating the following: 1) he engaged in constitutionally protected activity; 2) defendants' actions caused plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  Shero v. City of Grove, Okla., 510 F.3d 1196, 1203 (10th Cir. 2007) (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).  The third element requires that the plaintiff show that defendants' retaliatory motive was a "but for" cause of the defendants' actions.  Smith v. Maschner, 899 F.2d 940, 949-50 (10th Cir. 1990).

"An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights."  Peterson, 149 F.3d at 1144 (quotation omitted) (emphasis in original).  Factual allegations consisting only of

engagement in protected activity, for example filing prison grievances or lawsuits, "[do] not establish the requisite causal connection for [a] retaliation claim. If it did, litigious prisoners could claim retaliation over every perceived slight and resist summery judgment simply by pointing to their litigiousness." Strope v. Cummings, 381 Fed. App'x 878, 883 (10th Cir. 2010) (unpublished). Furthermore, temporal proximity between protected activity and a challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim. See Friedman v. Kennard, 248 Fed. App'x 918, 922 (10th Cir. 2007) (citing cases) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.").

In this case, plaintiff's allegations do not establish the requisite causal connection for a retaliation claim. Like the plaintiff in Strope, plaintiff's "attribution of retaliatory motive is conjectural and conclusory." Strope, 381 Fed. App'x at 883. Plaintiff does not even allege that Foster and Arko knew about his previous lawsuits and complaints against other individuals. Plaintiff simply alleges no facts supporting a retaliatory motive. It is thus recommended that Claim Three be dismissed.

Based on the findings above, and in the interest of judicial economy, the court has not addressed defendants' other bases for dismissal.

**JOHN DOE DEFENDANT**

Plaintiff seems to assert that because in his opinion H. pylori is only caused by fecal-oral contact, somebody (John Doe) had to have put fecal matter into plaintiff's food. Plaintiff gives no specific information as to when or where this occurred, nor does

he give any specific information about who might have done so. The Amended Prisoner Complaint was filed almost ten months ago on August 19, 2013, yet plaintiff has not provided the court with any information that identifies this John Doe defendant so that he may be served.

> Rule 4(m) of the Federal Rules of Civil Procedure provides in relevant part:
>
> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m). In addition, Local Rule 41.1 provides:

> A judicial officer may issue an order to show cause why a case should not be dismissed for failure to prosecute or failure to comply with these rules, the Federal Rules of Civil Procedure, or court order. If good cause is not shown, a district judge or a magistrate judge exercising consent jurisdiction may enter an order of dismissal with or without prejudice.

D.C.COLO.LCivR 41.1.

Based on the above, it is recommended that plaintiff's claim against John Doe be dismissed without prejudice unless plaintiff shows good cause for failure to serve this defendant.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss Amended Complaint (Docket No. 43) be **granted**. It is further

**RECOMMENDED** that plaintiff's claim against John Doe be dismissed pursuant to Fed. R. Civ. P. 4(m) and/or D.C.COLO.LCivR 41.1 unless plaintiff shows good cause

17

for failure to serve this defendant.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  June 18, 2014                s/ Michael J. Watanabe
       Denver, Colorado             Michael J. Watanabe
                                    United States Magistrate Judge